RONALD WILLITS and EDITH WILLITS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Willits v. Commissioner
Docket No. 11307-77.
United States Tax Court
T.C. Memo 1979-294; 1979 Tax Ct. Memo LEXIS 231; 38 T.C.M. (CCH) 1152; T.C.M. (RIA) 79294; August 3, 1979, Filed Robert J. Boumansour, for the petitioners. John O. Kent, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Lehman C. Aarons, pursuant to the provisions of section 7456(c) of the Internal Revenue Code of 1954, as amended, and General Order No. 6 of this Court, 69 T.C. XV. [1] The Court agrees with and adopts the Special Trial Judge's opinion which is set forth below. *232 OPINION OF SPECIAL TRIAL JUDGE AARONS, Special Trial Judge: Respondent determined a deficiency in petitioners' federal income tax for 1975 in the amount of $4214. The issue which remains in dispute herein is the amount of depreciation to which petitioners are entitled, under section 167 of the Code, [2] on three separate rental properties. Other rental expenses were claimed by petitioners on their return and disallowed in the notice of deficiency, but the parties have now agreed as to the amounts of such other expenses. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. At the time of filing the petition herein, petitioners (husband and wife) resided in Carson, California. On their joint returns for 1975, petitioners claimed rental loss of $13,819. Included in such loss was depreciation claimed in the total amount of $7332. This depreciation was divided among three properties as follows: 1533 Marcellana, Torrance,
California (Marcellana)
$4,000
1520 West 226th St., Torrance,
California (226th St.)
$2,440
Condominium, Lomita,
California (Condo-Lomita) $ 892
*233 As to Marcellana, the parties dispute both the allocation between land and buildings and the useful life of the buildings. Marcellana, consisting of a house and a building with four apartments in it, was built in 1925 and purchased by petitioners in 1972 for $50,287. The property was in a bad state of repair when purchased, and without substantial repairs and renovation petitioners did not expect to be able to continue to collect rents from tenants of Marcellana. Petitioners claimed a useful economic life of 10 years for Marcellana and allocated $40,000 of the $50,287 purchase price to the buildings. Respondent disallowed the depreciation in full. Petitioners offered no proof of useful life, nor allocation of purchase price other than the opinion of petitioner-wife, Edith Willits. The 226th St. property was 14 years old when purchased by petitioners in 1975 for $104,377. Petitioners used a component method for depreciating that property: They used a 25 year life for the building structure, 33-1/3 years for the flatwork, 10 years for fixtures and hardware, 25 years for the roof, 16-2/3 years for plumbing and 12-1/2 years for electrical installations. Respondent would apply *234 a 25 year life to the whole building as a single composite account. Petitioners have no record of the actual cost of such components nor was there any allocation to the components in their purchase agreement. There is no proof in the record as to the relative values of such components in 1975, other than petitioner-wife's bare affirmations of such values. Petitioner-wife also feels strongly that the useful life of the roof was overstated on her return. Condo-Lomita was purchased in 1975.It consists of a two bedroom apartment in a 24 unit condominium. It was new when purchased by petitioners for $29,389. The land on which the condominium improvement is located is not ground-leased. The only proof as to allocation of purchase price between land and building is a County of Los Angeles tax bill for fiscal year 1975-1976, allocating 54 percent of the condominium value to land. OPINION Petitioners' proof on all factual disputes in this case was either weak or non-existent. In the case of Marcellana, while contending for a 10 year useful life on the basis of the bad condition of the property petitioners nevertheless attributed 80 percent of the purchase price to the buildings. *235 Respondent, however, disallowed the claimed depreciation in full. The Court is convinced that some portion of the $50,287 purchase price was attributable to the building and that the building had some useful life. Making approximations, to the best of our ability, (see Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930)) we hold that 40 percent of the $50,287 purchase price of Marcellana was attributable to the buildings, and that the buildings had a useful life (for depreciation purposes) of 15 years. As to 226th St. we concur with respondent's disallowance of the component method used by petitioners. Regardless of the availability to petitioners of the component method had they constructed the building, had they been the first users, or had they been able to establish the relative values and useful lives of the components (contrast Shainberg v. Commissioner,33 T.C. 241 (1959) and Rev. Rul. 73-410, 1973-2 C.B. 53), petitioners were ignorant of the actual cost of the various components and presented no persuasive proof of the relative values of the components at the time they purchased the then 14 year old building. With respect *236 to this property petitioners have failed to carry their burden of proof ( Welch v. Helvering,290 U.S. 111, 115 (1933), Rule 142(a) of this Court's Rules of Practice and Procedure), and we hold that the structure, as a single composite unit, had a 25 year useful life. With respect to Condo-Lomita, the question presented is primarily a legal one. Petitioners contend that they had no interest in land, and accordingly that 100 percent of their purchase price is depreciable. Section 783 of the California Civil Code defines "a condominium" as follows: A condominium is an estate in real property consisting of an undivided interest in common in a portion of a parcel of real property together with a separate interest in space in a residential, industrial or commercial building on such real property, such as an apartment, office or store. * * * Section 1353 of the California Civil Code states that the incidents of a condominium grant include the portions of the building within the boundaries of the unit granted and further states that "[the] common areas are owned by the owners of the units as tenants in common, in equal shares, one for each unit." "Common areas" *237 are defined in section 1350 of the Civil Code as meaning "the entire project excepting all units therein granted or reserved." In the instant case, the land was not ground-leased, and there is no evidence that it was not a part of the "entire project." Moreover, section 659 of the California Civil Code defines "land" as follows: Land is the * * * material of the earth, whatever may be the ingredients of which it is composed, whether soil, rock, or other substance, and includes free or occupied space for an indefinite distance upwards as well as downwards, subject to limitations upon the use of airspace imposed, and rights in the use of airspace granted by law. It thus seems clear under the California statutes that, contrary to their contention, petitioners owned, in addition to the physical unit, a non-depreciable interest in the airspace that it occupied as well as an undivided interest in the surface and subsurface "land." We hold that petitioners did have an interest in land and, based upon the only evidence of allocation in the record herein (the property tax bill), that the purchase price was allocable 54 percent to land and 46 percent to depreciable improvements. *238 To reflect the above holdings, as well as the parties' agreement on other rental expenses, Decision will be entered under Rule 155. Footnotes
1. Pursuant to General Order No. 6 dated March 8, 1978, the post-trial procedures set forth in Rule 182 of this Court's Rules of Practice and Procedure are not applicable to this case.↩
2. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩